United States District Court
Southern District of Texas
**ENTERED**
August 29, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Joseph Bryant Everett, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:21-cv-01535 |
| Andrew Saul,<br>Commissioner of Social Security, | § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

This is an appeal from an administrative ruling that found Plaintiff Joseph Bryant Everett ineligible to continue receiving social security benefits, which was referred to the undersigned judge. Dkt. 17. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Defendant Kilolo Kijakazi's[1] Motion for Summary Judgment (Dkt. 15) and denying Everett's Motion for Summary Judgment (Dkt. 16).

---

[1] When this lawsuit was filed, Andrew Saul was properly named as the defendant and Commissioner of Social Security. Kilolo Kijakazi has since assumed the role of Acting Commissioner of Social Security and filed the motion for summary judgment on the agency's behalf.

## Background

Defendant originally determined Everett to be disabled in February 2000, which entitled him to Title II Period of Disability and Disability Insurance Benefits and Title II Child Disability Benefits.  R.136, 163-64.  At the time, Everett met the criteria for listings depressive bipolar and related disorders (12.04), anxiety and obsessive-compulsive disorders (12.06), and personality and impulse-control disorders (12.08).  R.148; 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04, 12.06, and 12.08.  In November 2009, Everett was re-evaluated and was again determined to be eligible for benefits because he continued to meet the listed criteria.  R.136.  Defendant's 2009 determination was the agency's most recent favorable decision for Everett, which is known as the "comparison point decision" (CPD).  R.139.

Everett continued to receive disability benefits until April 2018, when the agency began a fraud investigation into unreported work activities and earnings that were reflected in Everett's medical records.  R.55-56.  The agency's Special Agent Dickens observed and interviewed Everett, who was seen driving and hauling equipment to a worksite to do landscaping.  R.997.  Agent Dickens noted that another male was already on-site and appeared to work for Everett.  *Id.*

Later that day, Agent Dickens interviewed Everett.  *Id.*  Everett reported having a wife of twelve years and living with her and her minor children.

2

R.997-98.  He claimed that his landscaping was a "hobby and something to do to keep him from being bored," and that he "only advertises by word of mouth and only mows residential yards."  R.998.  He also told Agent Dickens that he volunteered at Big Brothers and Sisters Organization and at the Galveston County Office of Emergency Management as a member of their Central Emergency Response Team "[w]hen work gets slow."  *Id.*  Everett also reported that "he does all of his banking with Amoco Federal Credit Union" where he receives his disability benefits, reconciles his checking account, and pays bills online.  *Id.*  Everett also reported that he had received financing for at least one vehicle from Amoco and that he purchased eight vehicles from the same Ford dealership.  *Id.*

In light of this evidence, Agent Dickens concluded that Everett was a "highly functioning individual who is very active; however, his mannerisms and responses to certain lines of questioning could be perceived as being socially awkward."  R.999.  On April 23, 2018, Defendant issued Everett a notice of disability cessation, stating that he will no longer receive checks because his health had improved and he is able to work.  R.173.  The agency denied Everett's request for reconsideration, R.191-93, and Everett requested a hearing before an ALJ, R.194-95.

A hearing was held on January 16, 2020, and the ALJ heard testimony from Everett, Agent Dickens, a vocational expert, and Dr. Shakil Mohammed,

a medical expert specializing in bipolar disorder.  R.52-87.  At the hearing, the ALJ reviewed Agent Dickens's findings with Everett, particularly focusing on his work activities and finances.  *See* R.58-74.  Everett admitted to being irritated by the questioning, stating "for the fourth or fifth time" that he had already described his work activities to the ALJ.  R.65.  That is, he did "what it is ... whatever it may be" that his parents and family friends needed done on their property, such as replacing lightbulbs or cleaning floors.  *Id.*  He testified that his problem was not physical, but rather "getting along with others"— emphasizing that he was "not an invalid."  R.62.  He also confirmed that he previously volunteered for the Big Brothers and Sisters Organization and Galveston County on a regular basis.  R.61-62, 68.  When asked to summarize his testimony about the years leading up to Agent Dickens's investigation, the ALJ prompted Everett: "I see a pattern here of you doing work, doing work for your parents, your friends, and doing volunteer work.  Is that a fair characterization?"  R.68.  Everett responded, "Yes."  *Id.*  Everett, however, claimed that his parents pay his bills and living expenses and that he does not know how much that is worth or whether it should count as income.  R.58-61.

The ALJ also examined Dr. Mohammed, a medical expert who specializes in bipolar disorder.  R.78.  He testified that bipolar disorder "never goes away" and causes cycling in symptoms.  R.78-79.  When the ALJ asked if he had an opinion about whether Everett has improved medically from his

status in 2009 (the time of his last favorable agency determination), Dr. Mohammed opined that Everett still suffered from symptoms of bipolar disorder and Everett's self-reported improvements may be the result of the disorder's cycling.  R.79.  But, he admitted, "it's very difficult to say that there has been no medical improvement, because I don't have any way to look at it.… I have no way to compare it" because he did not think that Everett had any medical records post-dating 2009.  R.80.

On January 30, 2020, the ALJ issued an opinion finding that Everett's disability had ended by April 1, 2018 and that he has not been disabled since that time.  R.138.  She found that Everett can no longer meet the criteria for listings depressive bipolar and related disorders (12.04), anxiety and obsessive-compulsive disorders (12.06), and personality and impulse-control disorders (12.08).  R.140; 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 12.04, 12.06, and 12.08. Specifically, she found that Everett continued to have bipolar disorder and seizures, but they no longer meet or medically equal the listed impairments that would deem Everett automatically eligible for benefits.  R.140.  In so finding, the ALJ determined that Everett did not have marked or severe limitations in any of the "paragraph B" functional criteria, as he had only (i) a mild limitation in understanding, remembering or applying information; (ii) a moderate limitation in interacting with others; (iii) a mild limitation in the

ability to concentrate, persist, or maintain pace; and (iv) a moderate limitation for adapting or managing himself.  R.140-42.

Because Everett did not satisfy either these "paragraph B"—or, alternatively, "paragraph C" criteria for documented, "serious and persistent medical disorders"—Everett was no longer considered presumptively disabled under the regulations.  The ALJ proceeded to describe Everett's medical improvement and determine his residual functional capacity (RFC) as follows:

> [S]ince April 1, 2018, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, ropes, or scaffolds.  The claimant cannot work around unprotected heights, dangerous moving machinery, large bodies of water, or open flames.  He cannot perform any commercial driving.  With regard to his mental limitations, the claimant can understand, remember, and apply detailed, but not complex instructions, and maintain concentration, persistence, and pace for two-hour periods with customary breaks throughout an eight hour workday.  The claimant cannot perform fast-paced production work and *can maintain occasional interaction with supervisors and coworkers and supervision/incidental contact with the general public*.

R.143-44 (emphasis added).  Given this RFC, the ALJ found that Everett could hold jobs available in the national economy, including those identified by a vocational expert at the hearing.  R.150-51.  This included jobs such as industrial cleaner, laundry worker, and dishwasher, among others.  R.151.

Everett appealed the ALJ's decision to the Social Security Administration Appeals Council, which remanded Everett's matter due to two

legal errors.  R.163-64.  The Appeals Council found that the ALJ failed to resolve Everett's Title II claim for Child Disability Benefits and that she erroneously applied the updated criteria for listed impairments 12.04, 12.06, and 12.08 instead of the previously applicable criteria from Everett's CPD in 2009.  R.163-64.

On remand, the ALJ convened another hearing on November 10, 2020. R.88-108.  Everett reported that, in the nine months since the prior hearing, he had been hired and dismissed from a new job as a substitute bus monitor. R.97.  Otherwise, he reported that the only new medical condition or limitation that had arisen is increased anxiety, but he had no changes in medication or any side effects from medication.  R.95-96.

On November 30, 2020, the ALJ issued another adverse opinion finding that Everett had improved medically and no longer met the listed criteria for 12.04, 12.06, or 12.08.  R.14-16.  She determined his RFC to be the same as it was in January 2020, except for adding that "[t]he claimant can respond appropriately in routine work settings, can accept instructions and make decisions in a routine work setting."  *Compare* R.143-44 (Jan. 27, 2020 RFC) *with* R.18 (Nov. 30, 2020 RFC).  In doing so, the ALJ relied heavily on Everett's prior statements to Agent Dickens, his hearing testimony, and his medical records—many of which were available at the first hearing.  *See* R.10-29. Having analyzed substantially identical evidence and having found Everett

7

had substantially the same RFC, the ALJ determined that Everett could hold jobs that were available in the national economy. R.27. These included jobs identified by a new vocational expert, such as groundskeeper and janitor. *Id.*

Everett appealed to the Appeals Council again but was unsuccessful. R.1-4. The Appeals Council's denial rendered the ALJ's November 2020 decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

8

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I.   Legal Framework

After finding that a claimant is disabled, the Commissioner periodically evaluates whether the claimant's disability has continued. 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(a). The claimant must provide the Commissioner with evidence that supports continued disability, including reports from physicians, psychologists, or others who have treated or provided him. 20 C.F.R. § 404.1593(b). The Commissioner may terminate the claimant's benefits if substantial evidence shows that "(1) 'there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work)'; and (2) 'the individual is now able to engage in substantial gainful activity.'"

*Trejo v. Kijakazi*, 2022 WL 943045, at *2 (S.D. Tex. Feb. 10, 2022) (quoting 42 U.S.C. § 423(f)(1)), *report and recommendation adopted,* 2022 WL 913058 (S.D. Tex. Mar. 29, 2022); *see also Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991) (explaining that the Commissioner may terminate benefits if claimant's condition improves).

In determining whether a claimant's disability should continue or end, the ALJ must conduct an eight-step analysis in which the Commissioner bears the ultimate burden of proof.  20 C.F.R. § 404.1594(f); *Griego*, 940 F.2d at 944 n.1; *Trejo*, 2022 WL 943045, at *2 n.5.  Those eight steps are: (1) whether the claimant is currently engaged in substantial gainful activity, (2) if not, whether the claimant has an impairment or a combination of impairments that meets or medically equals the severity of an impairment enumerated in 20 C.F.R. Pt. 404, Subpt. P, App'x 1, (3) if not, whether there has been medical improvement, (4) if there has been medical improvement, whether the medical improvement is related to the claimant's ability to do work, (5) if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, whether an exception to medical improvement applies, (6) if there has been medical improvement related to the claimant's ability to do work, or if one of the first group of exceptions applies, whether the combination of the claimant's current impairments is severe, (7) if the combination of the claimant's current impairments is severe, whether the claimant, based on his

assessed RFC, is able to engage in past relevant work, and (8) if not, whether the claimant is able to perform other substantial gainful activity given his RFC, age, education, and past work experience. *Trejo*, 2022 WL 943045, at *2 n.5 (citing 20 C.F.R. § 404.1594(f)).

## II.   <u>The ALJ's determination was supported by substantial evidence.</u>

Everett argues that (1) the ALJ did not fulfill her duty to review the entire record, and (2) the ALJ's RFC did not account for Everett's limitations. Both challenges attack the sufficiency of the evidence supporting the ALJ's opinion. Neither argument is meritorious, as substantial evidence supported the ALJ's opinion—and indeed was specifically discussed by the ALJ.

### A.   **The ALJ considered the entire record.**

Everett first complains that the ALJ failed to consider all the evidence in the record. Dkt. 16 at 3-19. In particular, Everett argues that the ALJ ignored favorable testimony from four witnesses: (1) Michelle Garcia, a consulting psychologist, (2) Dr. Shakil Mohammed, a medical expert specializing in bipolar disorder, (3) Lynn Boatwright, Everett's treating psychologist, and (4) Sharlett Everett, his mother. *Id.* at 4. Everett presents no argument as to why he believes the ALJ did not review or consider the evidence presented by these witnesses. Instead, his motion for summary judgment consists of lengthy excerpts of testimony and treatment records that

support his continued disability.  *Id.* at 5-16.  As such, his attack on the ALJ's opinion is both superficial and demonstrably inaccurate.

As a preliminary matter, the ALJ need not cite each and every piece of medical evidence considered in order to prove that she fulfilled her duty to consider the entire record.  *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam) (citing *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994), for the principle that ALJs need not articulate specific evidence that was weighed and rejected).  Rather, when an ALJ has stated that she has considered all record evidence, a claimant must identify contrary evidence and reasons that provide a legitimate basis to call into question the ALJ's general statement.  *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010) (deferring to the ALJ's statement that he considered "all of the evidence," absent any reason or evidence to dispute it); *Parsons v. Saul*, 2020 WL 444468, at *3 (N.D. Tex. Jan. 13, 2020) (finding that "contrary evidence and reasons detailed below provide a legitimate basis to dispute the ALJ's general statement"), *report and recommendation adopted*, 2020 WL 434578 (N.D. Tex. Jan. 28, 2020).

Here, the ALJ repeatedly stated that she "considered the evidence of record in its entirety prior to the issuance" of her decision.  R.11; *see also* R.13, R18.  And while Everett does cite favorable statements from Dr. Garcia, Dr. Mohammed, and his mother, he ignores the fact that the ALJ detailed the reasons why those witnesses were not persuasive:

- First, the ALJ found consultative psychologist, Dr. Garcia, to be unpersuasive with respect to her opinion that Everett was unable to manage his benefits in his own interest because it was contradicted by Everett's statements to Agent Dickens. R.23. Specifically, the ALJ pointed out that Everett stated he managed his accounts at Amoco Federal Credit Union, used Amoco to finance his vehicles, and shopped and paid bills online. *Id.*

- Second, the ALJ found Dr. Mohammed's opinion that Everett has not experienced medical improvement unpersuasive because Everett had told his treating providers that his symptoms had improved consistently since 2009. R.24. The ALJ also noted that Everett was able to maintain a long-term romantic relationship and home life with his domestic partner and children, as well as serve as a volunteer at Big Brothers and Sisters. *Id.*

- Third, the ALJ found that Lynn Boatwright's opinions were only partially persuasive because "[t]here are no specific limitations given and no actual underlying treatment notes in the medical record that support" her opinion. R.22. As the ALJ further explained, Ms. Boatwright's opinion that Everett struggles to interact with others was undermined by medical records reflecting his participation in "a variety of activities that involve interactions with others, including volunteering with Big Brothers/Sisters (sic), volunteering with Galveston County CERT, working his own business, and performing child care and having a girlfriend." R.22-23.

- Finally, the ALJ deemed unpersuasive Sharlett Everett's written testimony that Everett struggles daily with euphoric highs and debilitating lows, because the medical treatment notes "indicate that medication controls his seizures, bipolar disorder, depression and anxiety." R.25. The ALJ also found Ms. Everett's letter unpersuasive because it wholly ignored the fact that Everett had been performing work for his family and friends. *Id.*

Thus, the ALJ explicitly considered and addressed the evidence presented by each of these witnesses. Although the ALJ deemed their testimony unpersuasive, in whole or part, Everett is manifestly incorrect in stating that the ALJ failed to consider them at all.

13

At bottom, Everett asks the Court to undertake its own determination of whether these witnesses are persuasive and what weight to accord their opinions. That is precisely the type of *de novo* review courts must decline. *Brown*, 192 F.3d at 496. The ALJ weighed Everett's physical capabilities, volunteerism, and long-term history of working for family and friends against these witnesses' testimony. She alone was entitled to resolve that conflicting evidence. *Perez*, 415 F.3d at 461; *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (courts cannot "reweigh the evidence in the record nor try issues de novo, nor substitute [their] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision"). The Court cannot disturb the ALJ's conclusions, which were supported by substantial evidence. Everett's first contention fails.

## B. The ALJ's RFC determination was supported by substantial evidence.

Everett also argues that the ALJ failed to incorporate all of Everett's limitations in her RFC determination. Dkt. 16 at 19-22. Everett identifies only two purported flaws with the RFC: (1) that it does not account for Everett's lack of prior work experience due to disability, and (2) that it does not incorporate "rapid cycling, mood, excessive worrying, restlessness, difficulty

14

concentrating and … frequent outbursts," as described by Dr. Garcia, Dr. Mohammed, Ms. Boatwright, or Sharlett Everett. *Id.* at 20-21.

The first alleged omission conflates the RFC determination with the determination that someone of Everett's RFC, age, education, and work experience can perform a job in the national economy. An RFC sets out "the most [a claimant] can still do despite [his/her] limitations." 20 C.F.R. § 416.945(a). Because it reflects Everett's physical and mental *capacity*, Everett's work history is not relevant. *Cf.* 20 CFR §§ 404.1560(c), 404.1566 (regulations relating to a claimant's vocational background and whether work exists in the national economy). The ALJ did not have to account for Everett's lack of formal employment when formulating the RFC.

The second alleged omission overlaps with Everett's challenge to the ALJ's assessment of the record evidence, generally. That is, Everett argues that the ALJ should have included more of the limitations described by Dr. Garcia, Dr. Mohammed, Ms. Boatwright, or Sharlett Everett when formulating the RFC. Dkt. 16 at 21. But as discussed *supra*, Part II.A, the ALJ provided detailed discussions of each witnesses' opinions and explained why they were not persuasive. R.22-25. She weighed their opinions against evidence of Everett's daily activities, like his ability to perform landscaping, handyman, and volunteer work and his ability to maintain a stable romantic relationship. *Id.* Her analysis was proper, as "[i]t is appropriate for the Court to consider

15

the claimant's daily activities when deciding the claimant's disability status."
*Leggett v. Chater*, 67 F.3d 558, 565 n.12 (5th Cir. 1995); *see also Trejo*, 2022
WL 943045, at *4 (ALJ appropriately considered claimant's ability to work,
exercise, clean, and shop); *Bond v. Astrue*, 2010 WL 497749, at *9 (E.D. La.
Feb. 2, 2010) (same).

Moreover, the ALJ did not simply reject those witnesses summarily
when determining Everett's RFC.  She bolstered her RFC determination with
a detailed summary of Agent Dickens's investigative report, R.20, and a
lengthy discussion of Everett's medical records from 2016 to 2022, R.20-22.
This evidence included, for example, Agent Dickens's findings that Everett
owned property, volunteered in the community, performed regular handyman
and landscaping work, and managed his own finances.  R.997-98.  It also
included medical records where Everett reported doing well and staying busy
with handyman, landscaping, or volunteer work.  R.917 (March 16, 2016
psychiatric treatment notes); R.880 (July 11, 2016 progress notes); R.873
(October 10, 2016 notes), R.1393 (September 11, 2017 progress notes).

The ALJ acknowledged that Everett reported worsened symptoms
during psychiatric visits post-dating Agent Dickens's investigation, but found
that those symptoms were situational and exacerbated by the stress of the
disability review.  *See* R.21; R.1091 (June 25, 2018 progress note reporting
Everett had not been seen since before Agent Dickens's investigation and

"came in upset about the insurance company/social security challenging his diagnosis had 'improved'"); R.1394 (Feb. 11, 2019 treatment notes reporting Everett "came in saying he was stressed and irritable from his recent disability hearing"); R.1042 (Apr. 1, 2019 treatment notes reporting Everett's irritation and frustration over his "insurance situation"). Despite the situational stress, the ALJ identified multiple psychiatric visits where Everett's providers noted that his bipolar disorder was in remission or partial remission in 2018 and 2019. *See, e.g.*, R.1062 (Nov. 12, 2018 progress note indicating "partial remission"); R.1083 (Aug. 1, 2018 progress notes indicating "remission"); R.1043 (Apr. 1, 2019 progress notes indicating "partial remission").

The ALJ relied on this evidence—and more—to support her finding that Everett could perform work at all exertional levels, with "occasional interaction/contact with supervisors and coworkers and superficial/incidental contact with the general public." R.18. This determination was supported by substantial evidence and properly accounts for Everett's persistent symptoms of bipolar disorder. In particular, the RFC's non-exertional limitation for Everett's interactions with and exposure to others is supported by the record and adequately accounts for Everett's symptoms.

Everett's attempt to highlight countervailing evidence that would favor additional limitations merely invites the Court to reweigh the evidence. The

17

Court declines to do so and recommends the ALJ's decision be affirmed. *Brown*, 192 F.3d at 496.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. 15) be **GRANTED**, that Plaintiff's Motion for Summary Judgment (Dkt. 16) be **DENIED**, and that the ALJ's decision be **AFFIRMED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 29, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge